

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-0193-09

### THE STATE OF TEXAS

### v.

### JIMMIE DALE WHITE, Appellee

### ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
### IN CAUSE NO. 03-07-00041-CR FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

**HOLCOMB, J., delivered the opinion of the unanimous Court.**

The trial court granted Jimmie Dale White's motion to dismiss the indictment against him, and the court of appeals affirmed. We vacate and remand.

On June 2, 2003, a Travis County grand jury returned an indictment charging White with the May 3, 1986, murder of Michael James Desjardins. On July 15, 2004, White filed a pretrial motion to dismiss the indictment on the ground that "the [seventeen-year] delay in the filing of charges [had] resulted in a denial of the opportunity for a fair trial." White argued specifically that

"[m]ost, if not all, of the cast of characters in this matter were and are homosexual men, a number of whom would [have been] able to corroborate portions of [his] defense [had they not] died in the intervening years." In support of his motion to dismiss, White cited the "Due Process clause of the United States Constitution"[1] and the Due Course of Law Clause of Article I, § 19, of the Texas Constitution.

On August 24, 2004, the trial court held an evidentiary hearing on White's motion to dismiss. At that hearing, four witnesses testified for the defense and none testified for the State.[2] At the close of the evidence, White summed up that evidence as he saw it and argued to the trial court as follows:

> "We've got a seventeen-year delay in this case with witnesses dying like flies over here, because they're all sharing Acquired Immune Deficiency Syndrome or car wrecks, or whatever the reason is [the police were] aware of it. [The police] knew all along they were dealing with the gay community, and they knew they were dealing with a disease which was ravaging that community, and for whatever reason they chose not to pursue [the investigation].
> "We would argue that on equitable grounds alone, combined with the due process which is required, that [White] has been and will be denied a full and fair right to a trial because of this delay and because of the loss of witness after witness. And we don't even – we haven't finished tracking these people down. We don't know how many more have died, but we know at least eleven of them have.
> "Plus we've got the lead investigative officer in the case at the time who can't remember anything about the case even after he's reviewed it. How are we going to cross-examine that? Clearly we can't cross-examine all of the people who've passed away, including one of the lead suspects.

---

[1] Presumably, White meant the Due Process Clause of the Fourteenth Amendment. The United States Supreme Court has never held the Due Process Clause of the Fifth Amendment to be applicable to the states. *See* W. LaFave, et al., *Criminal Procedure* § 2.6(b) (3rd ed. 2007) (most, but not all, of the Bill of Rights guarantees are applicable to the states through the Due Process Clause of the Fourteenth Amendment); 16C C.J.S. *Constitutional Law* §§ 1449 & 1454 (2005) (Due Process Clause of the Fifth Amendment is not applicable to the states).

[2] White's witnesses included a private investigator, an Austin Police Department detective, and two former Austin Police Department detectives. The specifics of the witnesses' testimony need not concern us today.

"So I would argue, one, that we've got an implied bad faith here, because [the police] could have pursued it and had all of the evidence at their fingertips and chose not to. If it's not bad faith, I don't know what is. It's a conscious indifference, which I think arises to the level of bad faith. There could be no argument in this case that we're going to have a nearly impossible burden of proving what we need to prove defensively with the death of all of these witnesses."[3]

The State argued in response that: (1) White had no evidence either that the State had "intentionally undertaken to gain some tactical advantage [by the seventeen-year delay]" or that the State had "some other bad faith purpose," and (2) White's own evidence showed that with respect to the investigation of Desjardins' death, the State had done "everything that [it] could . . . with what [it] had."

At the close of the arguments, the trial court took White's motion to dismiss under advisement.

On January 4, 2005, the trial court held a supplemental evidentiary hearing on White's motion to dismiss. At that hearing, one witness testified for the defense and one witness testified for the State.[4] At the close of the evidence, White argued to the trial court as follows:

"Your Honor, the defense will stand on its original argument in this case with only the additional statement that we've shown six more people who have been deceased since this crime occurred, one of which is a very possible determinative

---

[3] Shortly before White made these equity and due process arguments, he mentioned to the trial court the law regarding lengthy post-indictment delay (as opposed to lengthy pre-indictment delay, which existed in this case), with particular reference to *Doggett v. United States*, 505 U.S. 647 (1992). In *Doggett*, a Sixth Amendment speedy trial case, the Supreme Court recognized that "excessive [post-indictment] delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." 505 U.S. at 655. Reading the August 24, 2004, hearing as a whole, we think it clear that White, in mentioning *Doggett* to the trial court, was not invoking the Sixth Amendment as a basis for his motion to dismiss; rather, he was arguing by analogy that in this case, which involved excessive pre-indictment delay, compromise of the reliability of the trial should also be presumed.

[4] Again, the specifics of the witnesses' testimony need not concern us today.

alibi witness that was living at the very house that the police think the crime occurred in.

"And . . . we're left again holding on to a very tenuous position here of trying to potentially mount a defense when all of the defense witnesses are dead, and it's not our fault that this happened and it took this long to get this done.

"So, we'll stand on our original argument in this case."

The State argued in response:

"Your Honor, I would ask that the court deny this motion. It is unfortunate that all of these people have died. It doesn't help our case, either. However, even though the time has passed, this defendant still should be brought to trial. Some of these people they've listed as defense witnesses are just character or reputation witnesses. The other ones, it seems very tenuous that they might have been present, they might have known something. There's not anything solid that points to any of these witnesses as real witnesses that the defense would need."

At the close of the argument, the trial court again took White's motion to dismiss under advisement.

On January 27, 2005, White filed a supplement to his motion to dismiss, which argued, in relevant part, as follows:

"There have been two hearings in support of the Defendant's Motion to . . . Dismiss the indictment. While the focus of those hearings has been on the loss of defense witnesses during the intervening years since 1986, another factor has arisen from the testimony of the [investigating] officers involved.[5] That factor is the inability of the State to assure the defense that it will be able to comply with providing exculpatory evidence pursuant to the dictates of *Brady v. Maryland*, 83 S.Ct. 1194 (1963), and *Arizona v. Youngblood*, 109 S.Ct. 333 (1988), in providing Due Process pursuant to Article I, Section 19 of the Texas Constitution as well as the Fifth Amendment [sic] of the United States Constitution."[6]

On December 31, 2006,[7] the trial court issued an order granting White's motion to dismiss

---

[5] *See* footnote two, *supra*.

[6] *See* footnote one, *supra*.

[7] December 31, 2006, was the trial court judge's last day in office.

"on the grounds that under the provisions of the Texas and U.S. Constitutions the defendant is unable to obtain a fair trial due to delay and the death of innumerable necessary witnesses." The trial court, in its written order, did not specify which provisions of the Texas and United States constitutions required the granting of White's motion to dismiss. On that same date, the trial court sent an electronic-mail message to the parties elaborating somewhat on its decision to grant White's motion. That e-mail read, in relevant part, as follows:

> "I have given this matter considerable thought during the past couple of years. We have had extensive pretrial hearings . . . . I must concede that I was leaning towards denying the motion . . . . After re-reading *U.S. v. Marion* [404 U.S. 307 (1971)], *U.S. v. Lovasco* [431 U.S. 783 (1977)], and *Taylor v. U.S.* [238 F.2d 259 (D.C. Cir. 1956)],[8] I am not convinced that the current law supports the defense. However, I do not believe that the defendants in those cases presented as strong a case as Mr. White. I have tried ancient murder cases and have observed how difficult it is for juries to ascertain the truth after an extensive passage of time even when the witnesses are still available. At the proverbial 'end of the day' I just do not believe that the defendant can have a fair trial with the death of so many of the witnesses. I do not find that the State was in any way at fault in this matter. Therefore, I reluctantly, and with much hesitation, grant the defense motion to quash the

---

8 White cited *Lovasco* for authority in his July 15, 2004, motion to dismiss; he cited *Marion* for authority in his January 27, 2005, supplement to his motion to dismiss; and he mentioned *Taylor* but did not explicitly rely upon it for authority in his January 27, 2005, supplement to his motion to dismiss.

In *Lovasco* the Court held that due process has a limited role to play in protecting against oppressive pre-indictment delay but that prosecuting a defendant following normal investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by that delay. *United States v. Lovasco*, 431 U.S. 783, 789, 796 (1977).

In *Marion* the Court noted that due process would require dismissal of an indictment if it were shown that pre-indictment delay had caused substantial prejudice to the defense and that the delay had been an intentional device to gain tactical advantage over the defense. *United States v. Marion*, 404 U.S. 307, 324 (1971). The Court also held that the Sixth Amendment right to a speedy trial is not implicated by pre-indictment delay. *Id*. at 313.

In *Taylor*, an obsolete, pre-*Marion* case, the D.C. Circuit held that the Sixth Amendment right to a speedy trial required reversal of a conviction where there had been a 3 ½ year delay between the crime and the indictment and a 2 ½ year delay between the indictment and the trial, and the defendant had been substantially prejudiced by the delay. *Taylor v. United States*, 238 F.2d 259, 262 (D.C. Cir. 1956).

indictment based on my finding that [sic] under the 5th and 6th Amendments to the U.S. Constitution and their comparable provisions in the Texas Constitution. I do realize that in doing this I may be doing something I dislike, which is making 'new law.'"[9]

On direct appeal, the State argued that the trial court had erred in granting White's motion to dismiss. In particular, the State argued that the trial court's order could not have been proper under equity, due process, or due course of law because the order had not been supported by: (1) any evidence that the State had intentionally delayed seeking an indictment in order to harass White or gain a tactical advantage over him; (2) any evidence that the State had, in bad faith, lost or destroyed material exculpatory evidence; or (3) any evidence, as opposed to mere speculation, that the seventeen-year delay had substantially prejudiced White's defense.

The court of appeals did not reach the State's substantive arguments but, instead, affirmed the trial court's order on a procedural ground:

> "[W]e are to uphold the district court's order if it is supported by the record and correct under any theory of law applicable to the case.[10] This principle applies regardless of the extent to which the district court stated its legal grounds in its order or elsewhere . . . .
>
>                       \*      \*      \*

---

[9] The trial court's e-mail is not in the record. However, both parties refer to the e-mail in their briefs and are in agreement as to its contents, and so, for the sake of argument, we will assume that we may consider the existence of the e-mail in our analysis. The existence of the e-mail does not affect the result of our analysis.

[10] An appellate court must uphold a trial court ruling that is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003); G. Dix & R. Dawson, *Texas Practice Series: Criminal Practice and Procedure* § 42.172 (2nd ed. 2001). Under this rule, the appellate court must "determine whether the trial court could have reasonably [ruled as it did] given the record evidence and given the applicable federal and state law." *Armendariz v. State*, 123 S.W.3d at 404. The evident purpose of this rule is to ensure that a trial court ruling will be upheld if the appellate court has assurance that the ruling was just and lawful.

"During oral argument, the State . . . acknowledged another potential constitutional ground[11] for the district court's order—the Sixth Amendment [right to a speedy trial].[12] White's arguments before the district court regarding the implications of delay . . . referenced both the Due Process Clause and the Sixth Amendment,[13] and he presented evidence of both pre- and post-indictment prejudice from the deaths of potential witnesses.[14] Furthermore, to the extent the district court's e-mail is considered, we observe that the court cited to *Taylor v. United States*, which relied on both pre- and post-indictment delay in dismissing an indictment under the Sixth Amendment.[15] Although the Sixth Amendment was among the constitutional grounds before the district court[16] (and even while the State acknowledges that it was a possible basis for the order), the State has not challenged this ground beyond a single sentence in a post-submission brief: 'To the extent the trial court based the dismissal of the indictment on the 6th Amendment, the Supreme Court has declined to extend the protections of that Amendment to pre-indictment delay.' Although disputing whether *pre*-indictment delay can support dismissal of the indictment on Sixth Amendment grounds, the State has not challenged whether White's evidence of prejudice from *post*-indictment delay—which, as the State acknowledges, is relevant only to a Sixth Amendment violation—established a violation of that provision.

"As this unchallenged ground could alone support dismissal, we affirm the district court's order. Alternatively, to the extent any of the State's arguments could somehow be construed as addressing this ground, we conclude such assertions are

---

[11] That is to say, a potential constitutional ground other than due process. But note that the State's "acknowledgment" during oral argument did not relieve the appellate court of its obligation to resolve the case according to the record and the law. *See Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002).

[12] The Sixth Amendment right to a speedy trial attaches at the time of arrest or formal charge, whichever comes first. *United States v. Marion*, 404 U.S. 307, 313, 320 (1971). Thus, the Sixth Amendment right to a speedy trial is a safeguard against post-indictment delay but not against pre-indictment delay.

[13] The record does not support this statement. *See* discussion, *infra*.

[14] According to the court of appeals, White presented evidence to the trial court that two potential witnesses for the defense had died after the indictment against him had been filed. *State v. White*, No. 03-07-00041-CR (Tex.App–Austin 2008), slip op. at 5-6 (not designated for publication).

[15] *See* footnote seven, *supra*.

[16] *But see* footnote thirteen, *supra*.

inadequately briefed and, therefore, are waived." *State v. White*, No. 03-07-00041-CR (Tex.App.–Austin 2008) (not designated for publication; parenthetical material and italicization in original; citations and footnotes omitted).

In other words, the court of appeals affirmed the trial court's order because the State had failed to explain why that order could not have been proper under the Sixth Amendment speedy trial guarantee when White had (supposedly) "referenced" the Sixth Amendment in the trial court and had presented evidence to that court of post-indictment prejudice from the deaths of potential witnesses. *See State v. Sandoval*, 842 S.W.2d 782, 785 (Tex.App.–Corpus Christi 1992, pet. ref'd) (where trial court granted defendant's motion to dismiss indictment and trial court did not specify which of defendant's legal theories were meritorious, the State, in order to preserve right to appellate review, was required to challenge all of defendant's legal theories, because any of those theories may have been basis for trial court's ruling); G. Dix & R. Dawson, *Texas Practice Series: Criminal Practice and Procedure* § 43.416 (2nd ed. 2001) (discussing *State v. Sandoval*).

The State later filed a petition for discretionary review that asserted one ground for review, which we granted.[17] *See* Tex. R. App. Proc. 66.3(c). In its petition and brief, the State argues: (1) it "did not brief [in the court of appeals] the question of a [Sixth Amendment] speedy trial violation based on post-indictment delay because [it] did not understand [that] ground to be the basis [of] the trial court's ruling"; (2) the trial court, in its order granting White's motion to dismiss and in its subsequent e-mail to the parties, "did not . . . refer to a violation of [White's Sixth Amendment] right to a speedy trial . . ., did not cite *Barker v. Wingo*, and did not detail findings under the *Barker*

---

[17] The State's ground for review reads as follows: "The court of appeals erred in affirming the trial court's dismissal of this murder indictment on the basis of an alleged violation of Respondent's Sixth Amendment right to a speedy trial without performing the required analysis to determine whether the claim had any merit under the record presented."

factors";[18] (3) the court of appeals erred in "reject[ing] the State's appeal without even walking through the *Barker v. Wingo* factors"; and (4) "the record does not bear out a speedy trial violation."

As we noted previously, the court of appeals affirmed the trial court's order because the State had failed to explain adequately why that order could not have been proper under the Sixth Amendment speedy trial guarantee. But was that Sixth Amendment guarantee a legal theory that the State was obligated to address on appeal at all?

Contrary to what the court of appeals stated in its opinion, White, in support of his motion to dismiss, never relied on the Sixth Amendment speedy trial guarantee. *See* footnotes three and thirteen, *supra*, and accompanying text. Before the trial court, White's legal theories were always equity, due process, and due course of law. He never asked for a speedy trial, never cited *Barker v. Wingo*, 407 U.S. 514 (1972), the controlling Sixth Amendment speedy trial case, and never argued his motion to dismiss in terms of the *Barker* factors.[19] And the trial court, in both its order granting the motion to dismiss and its subsequent e-mail to the parties, appeared to be ruling on the basis of the constitutional theories that White put forth. The trial court wrote not of White's lack of a speedy trial but rather of his inability to get a fair trial because of the long pre-indictment delay. Although the trial court, in its e-mail, cited the case of *Taylor v. United States*, 238 F.2d 259 (D.C. Cir. 1956),

---

[18] Under *Barker v. Wingo*, 407 U.S. 514, 530 (1972), a court, in determining whether an accused has been denied his Sixth Amendment right to a speedy trial, must employ a balancing test "in which the conduct of both the prosecution and the defendant are weighed." The factors to be weighed include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant resulting from the delay. *Ibid*. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id*. at 533. *See also Cantu v. State*, 253 S.W.3d 273 (Tex.Crim.App. 2008); *Shaw v. State*, 117 S.W.3d 883 (Tex.Crim.App. 2003).

[19] *See* footnote eighteen, *supra*.

an obsolete Sixth Amendment case, the trial court did not purport to rely on *Taylor* for authority. And although the trial court, in its e-mail, cited the Sixth Amendment, the court did not use the phrase "speedy trial" or cite to *Barker v. Wingo*, which suggests that its citation of the Sixth Amendment was simply a mistake, just as its citation of the Fifth Amendment instead of the Fourteenth Amendment[20] appears to be a mistake.

Under these circumstances, the State could have reasonably concluded that the trial court's order granting White's motion to dismiss was based only on the constitutional guarantees of due process and due course of law. Given that fact, the State, on appeal, was not obligated to argue why the trial court's order could not have been proper under the Sixth Amendment speedy trial guarantee, and the court of appeals erred in holding otherwise.

We sustain the State's ground for review, vacate the judgment of the court of appeals, and remand the case to that court for further proceedings consistent with this opinion.

DELIVERED FEBRUARY 10, 2010

PUBLISH

---

[20]  *See* footnote one, *supra*.