COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

THE STATE OF TEXAS,

Appellant,

v.

CARLOS ESPARZA,

Appellee.

§
§
§
§
§
§
§
§

No. 08-10-00173-CR

Appeal from the

County Court at Law No. 2

of El Paso County, Texas

(TC # 20090C13035)

## O P I N I O N

The trial court issued an order granting, in part, Carlos Esparza's motion to suppress. The State appeals from that order. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West 2006). We reverse.

## BACKGROUND

Esparza was charged by information with misdemeanor driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. § 49.04 (West 2011). The information alleged both the "per se" and "impairment" types of intoxication. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011).

Esparza filed a motion to suppress a police video as well as the results of an intoxilyzer breath test administered to him after his arrest.[1] In his motion, Esparza, citing the Fourth Amendment, argued that the video and breath test results should be suppressed as the fruits of an unlawful seizure. He also argued that the breath test results should be suppressed because: (1) there

---

[1] The record does not reflect the nature of the police video or precisely when the breath test was administered.

According to the complaint affidavit, the breath test administered to Esparza showed that he had a blood alcohol concentration of 0.098 in one breath specimen and a blood alcohol concentration of 0.096 in a second breath specimen.

was no deemed consent to the taking of a breath specimen under Texas Transportation Code § 724.011 because he "was illegally detained but not arrested";[2] (2) the arresting police officers failed to give him the statutory warning required by Texas Transportation Code § 724.015;[3] (3) he did not voluntarily, knowingly, and intelligently consent to the breath test; (4) his breath specimen was not taken within a reasonable period of time; (5) he "took the breath test after [he] was stopped [and] there [was] no way to ascertain what [his] breath alcohol concentration was at the time he was stopped"; and (6) the State did not preserve his breath specimen, which denied him the opportunity to discover potentially exculpatory evidence.

The trial court held an evidentiary hearing on Esparza's motion to suppress. At the start of the hearing, the State moved for a continuance because it was "having trouble getting ahold of the intox supervisor," whom it had subpoenaed.[4] Defense counsel objected to a continuance but stated nonetheless that he wanted to cross-examine the "intox supervisor," although he did not say why he

---

[2] Section 724.011(a) provides:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . while intoxicated, . . . the person is deemed to have consented . . . to submit to the taking of one or more specimens of the person's breath . . . for analysis to determine the alcohol concentration . . . .

TEX. TRANSP. CODE ANN. § 724.011 (West 2011).

[3] Section 724.015 provides in part:

> Before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that:
> (1) if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;
> (2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended . . . for not less than 180 days.

TEX. TRANSP. CODE ANN. § 724.015 (West 2011).

[4] The record does not reflect who the "intox supervisor" was or what his responsibilities were.

wanted to cross-examine him. Defense counsel's objections continued:

> Judge, the State has not provided me a breath test slip[5] in this case. When the test – there is testimony about the breath test, for extrapolation purposes, I need to know at what time the specimens were provided – they've got to provide two of them. There's got to be a two-minute delay between the two of them. And they have to put him behind the wheel at the time of driving intoxicated, and within two hours, according to *State versus Mata*,[6] they have to perform the field sobriety test – I'm sorry, the breath test. Without the breath test slip there's no way for me to know when those tests were done.

The trial court did not rule on the State's motion for a continuance, and the State failed to press its motion to an adverse ruling.

The State, after stipulating that Esparza's arrest was carried out without a warrant, offered the testimony of El Paso Police Officer Ruben Rivas, who testified as follows:

> Q (by the State): Let me draw your attention then to December 6th, 2009. Did you have – do you have any occasions involving a DWI car accident?
>
> A: Yes, sir.
>
> Q: Can you tell me a little bit about that case then?
>
> A: We were doing a proactive patrol and we rolled up on an accident that just, apparently, looked like it just occurred.
>
> Q: Okay.
>
> A: We got out of the vehicle and we observed the defendant inside the vehicle with the keys in the ignition and the ignition was on. We asked him what had happened. He stated that he had –

.   .   .

---

[5] The record does not reflect what a "breath test slip" is, but, presumably, it is the test report that an intoxilyzer prints out following a valid breath test. *See Texas Breath Alcohol Testing Program – Operator Manual* 14 (Rev. 2003) (published by the Texas Department of Public Safety and available on the Internet).

[6] Esparza was apparently referring to *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001), which addressed the factors needed to establish the reliability, and thus admissibility, of expert testimony regarding "retrograde extrapolation."

3

Q: Continue on.

A: We asked him what had happened. He said he struck the vehicle from behind. We asked him if he was okay, which he stated he was. We went over to check on the welfare of the other – of the other car, and we observed a passenger, pregnant lady. She said she was doing okay, but that they were just hit by the defendant and they identified the defendant as the driver of the vehicle that struck them.

.   .   .

Q: Okay. And did you notice any signs of intoxication when you were having contact with the defendant?

A: Yes, sir.

Q: And what were those signs?

A: We could detect a strong odor of alcohol emitting from the breath and person; also we saw red, glossy [sic] eyes of the defendant.

.   .   .

Q: What other signs?

A: We observed slurred speech. We got him out of the vehicle and we saw him swaying.

At the conclusion of Officer Rivas' testimony, the following transpired:

The Court: All right. Call your next witness.
    Thank you, Officer.

The State: Well, Your Honor, at this point I'm not sure that we need to go any further. We have established now that there was, you know, a valid reason for the encounter with the defendant. They were investigating a car accident. And so we've established, you know, the reason for the stop, basically. . . .
    Now, at this point, you have enough determination [information?] to decide whether or not they had a right to continue. We're pretty much done.

The Court: Call your next witness.

The State: The point I'm trying to make, Your Honor, is even if you said at this point that it was an illegal arrest, then what does that mean –

4

The Court: Are you going to call a witness or not?

The State: Well, I'm just asking if you think it's necessary, Your Honor.

The Court: Motion's granted.

The State filed a motion asking the trial court to make findings of fact and conclusions of law with respect to its granting of Esparza's motion to suppress. The trial court made such findings and conclusions, which were as follows:

1. The defendant was arrested and charged with Driving While Intoxicated on December 6, 2009.
2. Officer Rivas was on patrol and drove up to a car accident.
3. Officer Rivas observed the defendant inside one of the vehicles involved with the keys still in the ignition and the ignition on.
4. The defendant stated that he struck another vehicle from behind.
5. The driver of the other vehicle identified the defendant as the driver of the vehicle that struck her vehicle.
6. Officer Rivas detected a strong odor of alcohol coming from the breath and person of [the] defendant, and he also noticed that the defendant's eyes were red and glossy.
7. In addition, Officer Rivas noticed that the defendant's speech was slurred and that he swayed as he stood outside of his vehicle.
8. Officer Rivas called in a DWI STEP unit to assist with the case.[7]
9. The Court finds that the encounter with the defendant was lawful because of the traffic accident that had occurred.
10. Once Officer Rivas detected the strong odor of alcohol from [the] defendant, he had reasonable suspicion to investigate whether [the] defendant was intoxicated.
11. After Officer Rivas observed the defendant to have red and glossy eyes, slurred speech and other signs of intoxication, there was sufficient probable cause to arrest [the] defendant for driving while intoxicated.[8]
12. The State failed to present any testimony regarding the breath test results; therefore, those results were suppressed by the Court.

---

[7] The record does not reflect what a "DWI STEP unit" is.

[8] Probable cause to carry out a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in itself to warrant a belief by a prudent person that an offense has been or is being committed by the suspect. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The trial court's findings and conclusions made it clear that its order granting Esparza's motion to suppress actually granted it only in part. That is, the trial court found what it considered a proper basis on which to suppress the results of the breath test – the State's failure to present any testimony regarding that test – but the court found no violation of the Fourth Amendment and, therefore, no proper basis on which to suppress the police video.

On appeal to this Court, the State, in a single issue, argues that the trial court erred in suppressing the breath test results because Esparza established no proper basis for suppression. The State argues in particular that the arresting officers did not violate the Fourth Amendment on the day in question and that, in the trial court, Esparza failed to present any evidence that he did not voluntarily consent to the breath tests. Esparza argues in response that, both in his motion to suppress and at the start of the suppression hearing, he "informed the trial court that he was challenging the reliability and accuracy of the intoxilyzer test results," and, therefore, the trial court properly suppressed those results when the State "failed to make any showing that [those] scientific test results were reliable . . . ." Esparza also argues that the trial court properly suppressed the breath test results because "the State failed to demonstrate through competent evidence that probable cause authorized [his] arrest."

**DISCUSSION**

An appellate court must uphold a trial court ruling that is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. White*, 306 S.W.3d 753, 757 n.10 (Tex. Crim. App. 2010). "This principal holds true even when the trial judge gives the wrong reason for his decision, and is especially true with regard to admission of evidence." *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (citation omitted). "The evident purpose of this

6

rule is to ensure that a trial court ruling will be upheld if the appellate court has assurance that the ruling was just and lawful." *White*, 306 S.W.3d at 757 n.10.

In the instant case, the "theories of law applicable to the case" are limited to those theories of exclusion that Esparza offered to the trial court, because a trial court may properly exclude evidence only insofar as a party precisely and timely requests that it do so. *See Willover v. State*, 70 S.W.3d 841, 845-46 n.4 (Tex. Crim. App. 2002).

As we noted above, Esparza argues that, in the trial court, he objected to the admission of the intoxilyzer breath test results on the basis of their reliability and accuracy. If Esparza had in fact made such an objection in the trial court, then the trial court could have properly suppressed the breath test results when the State failed to present evidence of their reliability.[9] But the record does not bear out Esparza's claim that he made such an objection. Although Esparza offered several theories of exclusion to the trial court, both orally and in writing, none of those legal theories was clearly, or even arguably, a challenge to the reliability or accuracy of the breath test results. Esparza, in his arguments to the trial court, never used the words "reliability" or "accuracy," and he never referred to Rule 702.[10] If Esparza wanted to object to the admission of the breath test results on the grounds of reliability or accuracy, all he had to do was to state that objection in plain, unambiguous

---

[9] Breath test results are, as Esparza argues, a type of scientific evidence. *Hartman v. State*, 946 S.W.2d 60, 61-63 (Tex. Crim. App. 1997). Scientific evidence, because of its nature, is almost always offered through the testimony of expert witnesses. *Kelly v. State*, 824 S.W.2d 568, 572 n.9 (Tex. Crim. App. 1992). *See* TEX. R. EVID. 702. Once a party objects to scientific evidence under Rule 702, the proponent of the evidence has the burden of establishing its reliability. *Kelly*, 824 S.W.2d at 573. The proponent of breath test results can establish their reliability by showing that, on the occasion in question, the breath test was administered in accordance with the rules promulgated by the Texas Department of Public Safety. *Reynolds v. State*, 204 S.W.3d 386, 391 (Tex. Crim. App. 2006). If the breath test results are shown to be reliable, the opponent of the evidence can still object, and attempt to show, that the evidence is inadmissible under Rule 702 because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Kelly*, 824 S.W.2d at 572 & n.11.

[10] *See* footnote nine.

language, so that both the trial court and the State could understand, without guessing, the specific nature of his objection and then could take, if necessary, appropriate responsive action. *See Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). When making an objection in the trial court, "[s]traightforward communication in plain English will always suffice." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

We turn, then, to the legal theories of exclusion that Esparza actually did offer to the trial court. If the trial court could have properly suppressed the breath test results under any of those legal theories, then we must uphold the trial court's order.[11] *White*, 306 S.W.3d at 757 n.10.

Esparza's first argument in his motion to suppress was that the breath test results should be suppressed under the Fourth Amendment because they were the fruits of an unlawful seizure. However, the trial court found that there was no unlawful seizure,[12] and the record evidence – Officer Rivas' testimony at the suppression hearing – reasonably supports that finding. Thus, the trial court could not have properly suppressed the breath test results on the basis of the Fourth Amendment.

Esparza's second argument in his motion to suppress was that the breath test results should be suppressed because (a) there was no deemed consent to the taking of a breath specimen under Texas Transportation Code § 724.011 and (b) there was no deemed consent because he "was illegally detained but not arrested." However, this argument is premised on the notion that Officer Rivas illegally detained Esparza, and the trial court found that not to be true. Thus, the trial court could not have properly suppressed the breath test results on the basis of this legal theory.

---

[11] In our discussion today, we assume, without deciding, that Esparza did not effectively abandon the arguments that he made in his written motion to suppress when he failed to make them again at the suppression hearing.

[12] *See* the trial court's findings of fact and conclusions of law numbers two through seven.

8

Esparza's third argument in his motion to suppress was that the breath test results should be suppressed because the arresting officers failed to give him the statutory warning required by Texas Transportation Code § 724.015. However, Esparza had the initial burden of producing evidence to rebut the presumption of proper police conduct, *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005), and he did not carry that burden. Thus, the trial court could not have properly suppressed the breath test results on the basis of this legal theory.

Esparza's fourth argument in his motion to suppress was that the breath test results should be suppressed because he did not voluntarily and intelligently consent to the breath test. However, Esparza had the initial burden of producing evidence that he did not voluntarily and intelligently consent to the breath test, *State v. Kelly*, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006), and he did not carry that burden. Thus, the trial court could not have properly suppressed the breath test results on the basis of this legal theory.

Esparza's fifth argument in his motion to suppress was that the breath test results should be suppressed because his breath specimen was not taken within a reasonable period of time. We recognize that if a breath test is not administered within a reasonable period of time, then the results may not be admissible at trial to support retrograde-extrapolation testimony. *Mata v. State*, 46 S.W.3d 902, 916-17 (Tex. Crim. App. 2001). Nevertheless, breath test results are generally admissible at trial even if the breath test was administered several hours after the alleged offense, and even in the absence of retrograde-extrapolation testimony, because breath test results show that the defendant drank alcohol on the day in question and, therefore, "they tend to make it more probable that he was intoxicated at the time of driving . . . ." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Thus, the trial court could not have properly suppressed the breath test

results on the basis of this legal theory.

Esparza's sixth argument in his motion to suppress was that the breath test results should be suppressed because he "took the breath test after [he] was stopped [and] there [was] no way to ascertain what [his] breath alcohol concentration was at the time he was stopped . . . ." By this argument, Esparza seems to be arguing that the breath test results are not admissible to support retrograde-extrapolation testimony. But even if that is true, the breath test results are admissible, as we just noted, to show that he drank alcohol on the day in question. *Id.* Thus, the trial court could not have properly suppressed the breath test results on the basis of this legal theory.

Esparza's seventh argument in his motion to suppress was that the breath test results should be suppressed because the State did not preserve his breath specimen. However, the State, consistent with due process, was not required to preserve Esparza's breath specimen, *California v. Trombetta*, 467 U.S. 479, 491 (1984), and we know of no other law that might require the State to preserve his breath specimen. Thus, the trial court could not have properly suppressed the breath test results on the basis of this legal theory.

At the start of the suppression hearing, Esparza told the trial court that he wanted to cross-examine the "intox supervisor," but he did not say *why* he wanted to cross-examine him. It may be that Esparza wanted to cross-examine the intox supervisor regarding the manner in which the breath test was administered. If that were so, and if Esparza had communicated that to the trial court and to the State, then he would have been, in effect, challenging the reliability, and thus admissibility, of the breath test results, and the trial court could have properly suppressed the breath test results when the State failed to present evidence of their reliability.[13] But Esparza never stated, either orally

---

[13]    *See* footnote nine.

10

or in his motion to suppress, why he wanted to question the intox supervisor, and, therefore, he never put the State to its burden of proof regarding the reliability of the breath test results. Given that, we do not see how the trial court could have properly suppressed the breath test results simply because the State failed to call the intox supervisor as a witness.

Finally, Esparza complained, at the start of the suppression hearing, that the State had not given him "a breath test slip in this case." He complained further that, "for extrapolation purposes," he "need[ed] to know at what time the [breath] specimens were provided" and that without the breath test slip he had no way to know exactly when the breath test was administered.[14] But, as we have already explained, breath test results may be admissible at trial even in the absence of retrograde-extrapolation testimony. *Mechler*, 153 S.W.3d at 440. Thus, the trial court could not have properly suppressed the breath test results based on this legal theory.

## CONCLUSION

We have found no theory of law applicable to the case that will support the trial court's order suppressing the breath test results. Therefore, we have no assurance that the trial court's order is just and lawful. *See White*, 306 S.W.3d at 757 n.10. Accordingly, we sustain the State's issue, reverse the trial court's order, and remand the case to that court for further proceedings consistent with this opinion.

GUADALUPE RIVERA, Justice

October 26, 2011

Before McClure, C.J., Rivera, J., and Chew, C.J., (Senior)

(Publish)

---

[14] Presumably, Esparza knows *approximately* when the breath test was administered, because he was the subject of the test.

11