

# NUMBERS 13-23-00330-CR, 13-23-00331-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                             **Appellant,**

**v.**

SANDRA VASQUEZ,                                             **Appellee.**

## ON APPEAL FROM THE 38TH DISTRICT COURT
## OF UVALDE COUNTY, TEXAS

## OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Opinion by Justice Silva**

The State of Texas appeals the trial court's dismissals with prejudice of its two indictments against appellee, Sandra Vasquez.[1] By one issue, the State contends that the trial court lacked legal authority to dismiss either case. We affirm the dismissals in both causes.

## I. BACKGROUND

On November 15, 2021, the State indicted Vasquez, a former elementary school teacher, on two charges of bodily injury to a child. The indictments alleged that she "hit[]" and "slapp[ed]" two students. Five months later, Vasquez filed a "Motion to Enforce Non-Prosecution Agreement and Dismiss Indictment," arguing she had previously come to an agreement with the State: in exchange for surrendering her teaching certificate, the State would not indict or following indictment, the State would dismiss. The State's failure to dismiss the indictments, she argues, was a deprivation of her right to due process[2] and ran afoul of contractual principles.

In support of her motion, Vasquez attached a Texas Department of Family and Protective Services letter ruling out allegations of physical abuse against the two students; her Texas Education Agency (TEA) certificate indicating she had voluntarily surrendered her license; and several emails exchanged by her and the Uvalde County

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] Vasquez argued that she "surrendered a valuable property right—her teaching certificate—in reliance on the State's repeated promises not to prosecute her." *See generally Goldberg v. Kelly*, 397 U.S. 254, 262 n.8 (1970) (observing the existence of non-traditional property rights, including professional licenses); *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434 (Tex. App.—Austin 2011, pet. denied) (recognizing that a professional license is a property right for purposes of the due process clause).

District Attorney's Office (UCDAO), which we summarize below.

On December 14, 2021, Vasquez's counsel contacted UCDAO District Attorney Christina Busbee, stating in relevant part:

> [I]f you will recall, on [A]ugust 8th, you and I agreed in a telephone conference that if Ms. Vasquez did not go back to teaching, that the above cases regarding the student's allegations of assault would not "be filed[.]" Now it appears that they have, even though Ms. Vasquez did not go back to teaching and in fact has agreed to the revocation of her Teaching Certificate[.]

Busbee responded that the cases were indicted after TEA informed her office that Vasquez "was fighting the permanent relinquishment of her teaching certificate" in contravention of their "agreement."

Vasquez's counsel replied, disputing the characterization that Vasquez had been "fighting" anything. Vasquez's counsel explained that Vasquez was "trying to ensure that what she signed [from the TEA] could not be used as an admission against her in the criminal case." Attached to the email was a signed document representing that Vasquez had agreed to the temporary revocation of her teaching certificate.

Busbee notified Vasquez's counsel that the attached document was insufficient proof of Vasquez's fulfillment of the agreement because the revocation was limited to "only a [two-]year suspension," and their agreement was that Vasquez would "need to permanently surrender her teaching certificate."

In response, Vasquez's counsel maintained that it was "a complete suspension" of Vasquez's teaching certification but acknowledged that under the terms of the attached document, Vasquez's certification could be reinstated following an application, panel review, and testing.

3

Two days later, after receiving no answer from Busbee, Vasquez's counsel sent another email: "I would really like to get some resolution of this before Ms. Vasquez gets arrested and booked. Can we get a phone conference today or in the morning please[?] Ms. Vasquez has agreed to a complete and permanent revocation of her license."

On December 20, 2021, UCDAO Investigator Shayne Gilland responded to Vasquez's counsel and provided him with the document that Vasquez needed to fill out and return to the TEA to effectuate her license suspension. Vasquez signed and submitted the form on the same day.

On January 4, 2022, in response to a follow-up email from Vasquez inquiring on the status of the dismissals, Investigator Gilland stated:

> I apologize for the confusion, and you are correct that the case[s] will be dismissed as agreed. However, [Busbee] has requested for our Victims Assistance Coordinator [(VAC)] to reach out once again to the victims to ensure they are still fine with our agreement. They had previously indicated they were fine with that agreement[;] however[,] we just want to confirm that with them prior to the final dismissal and closing the case[s]. Our VAC will attempt to contact them today so we will let you know the outcome as soon as possible[.]

At a hearing on Vasquez's motion, the above emails were admitted into evidence without objection from the State. Vasquez reiterated her argument that the State had breached their agreement pre- and post-indictment and that she sought specific performance. The State—while conceding discussions regarding non-prosecution and later, dismissal, had occurred—argued it was improper for the trial court to weigh in on plea bargaining matters. The State also maintained it was within its authority to withdraw its offer of dismissal irrespective of whether Vasquez had performed, i.e., surrendered her teaching certification. Vasquez refuted the State's characterization of the agreement

4

as a "plea bargain agreement."

The trial court granted Vasquez's motion and thereafter issued an order which included untitled findings of fact and conclusions of law. In relevant part, the trial court found that there had been an agreement between the State and Vasquez, wherein the State would not indict and/or dismiss the indictments against Vasquez if she permanently surrendered her teaching certification; Vasquez accepted these terms and acted in reliance of the agreement; and following the State's breach of the agreement, Vasquez has been irreparably harmed by the loss of her professional certification and livelihood. This appeal followed.

## II.   DISCUSSION

By a single issue, the State argues the trial court was without any authority to dismiss the cases.

### A.   Standard of Review and Applicable Law

"An appellate court must uphold a trial court ruling that is reasonably supported by the record and is correct under any theory of law applicable to the case." *State v. White*, 306 S.W.3d 753, 757 n.10 (Tex. Crim. App. 2010); *see State v. Hatter*, 665 S.W.3d 584, 586 (Tex. Crim. App. 2023). When reviewing a trial court's decision on a motion to dismiss, we give almost total deference to the trial court's fact findings that are supported by the record. *See State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011); *State v. Fellows*, 471 S.W.3d 555, 561 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd). For pure questions of law or mixed questions that do not depend on credibility

5

determinations, our review is de novo. *See Krizan-Wilson*, 354 S.W.3d at 815; *Fellows*, 471 S.W.3d at 561.

"[T]he dismissal of an indictment is a drastic measure only to be used in the most extraordinary circumstances." *State v. Hill*, 499 S.W.3d 853, 872 n.69 (Tex. Crim. App. 2016). Generally, a trial court lacks authority to dismiss a case without the State's consent. *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003); *see also State v. Garcia*, No. 13-21-00404-CR, 2022 WL 3452413, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 18, 2022, no pet.) (mem. op., not designated for publication). The Texas Court of Criminal Appeals has acknowledged exceptions for dismissal without prosecutorial consent, including "when a defendant is denied a right to speedy trial, when there is a defect in the charging instrument, when necessary to remedy certain Sixth Amendment violations, or when a defendant is detained without a charging instrument in violation of article 32.01 of the Texas Code of Criminal Procedure." *State v. Villaloboz*, 658 S.W.3d 320, 326 (Tex. App.—El Paso 2022, pet. ref'd); *see Mungia*, 119 S.W.3d at 817. Trial courts, however, are not limited to these delineated exceptions. *Mungia*, 119 S.W.3d at 816–17 ("[A]s we explained in *Frye* and *Terrazas,* although a particular constitutional violation has not yet been recognized as a basis for a trial court to dismiss a charging instrument, this does not preclude a trial court from having authority to dismiss on that ground."); *State v. Terrazas*, 962 S.W.2d 38, 41 (Tex. Crim. App. 1998) (observing that "[t]he list of authorized dismissal situations in *Johnson* . . . was a list of examples only"); *State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991) (setting forth

6

circumstances under which a trial court may dismiss a charging instrument without the prosecutor's consent).

## B.    Analysis

Despite the State addressing the merits of Vasquez's motion and making several arguments before the trial court, including that Vasquez failed to perform in accordance with the agreement, on appeal the State summarily argues that the trial court was without authority to dismiss because "[n]one of the exceptions to the general rule are applicable herein." Although a trial court's ability to dismiss a case is limited, the State is incorrect that the trial court's ability is bound by the confines of the aforementioned listed "exceptions to the general rule." *See Mungia*, 119 S.W.3d at 816.

Moreover, though it is unclear under what legal theory the trial court granted Vasquez's motion, we recognize that Vasquez sought dismissals under at least two legal theories: contractual and due process. Courts have recognized that a dismissal with prejudice may be granted on either. *See generally Hatter*, 665 S.W.3d at 594–95 (reviewing a trial court's dismissal with prejudice, finding evidence of "the beginning of a plea bargain agreement" between the State and Hatter, and remanding for the lower appellate court to determine whether "the trial court's decision granting Appellee's motion for specific performance is correct under any other theory of law applicable to the case, including but not limited to . . . whether Appellee was entitled to specific performance"); *Terrazas*, 962 S.W.2d at 42 ("If Appellee's rights to due process and due course of law were violated, and dismissal of the indictment was the appropriate means to neutralize the taint of the constitutional violation, then the trial court did not abuse its discretion.");

7

*see also Santobello v. New York*, 404 U.S. 257, 261–63 (1971) (discussing the contractual principles that apply to plea agreements and concluding that, where the State failed to perform its obligations under an agreement, the trial court had discretion to award the defendant the relief it found most appropriate including, but not limited to, "specific performance of the agreement").

Because the State is incorrect as to the trial court's limitations and does not address the merits of the dismissals under either legal theory before the trial court, we conclude the trial court did not abuse its discretion in dismissing the indictments. *See State v. Copeland*, 501 S.W.3d 610, 613–14 (Tex. Crim. App. 2016) (holding the State forfeited its challenge to the trial court's ruling where the State did not address a theory of law applicable to the case on appeal); *State v. Sandoval*, 842 S.W.2d 782, 785 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd) ("Therefore we hold that the State . . . must challenge every ground raised in the motions [to dismiss a charging instrument] to preserve its right to appellate review."); *State v. Francis*, No. 13-14-00356-CR, 2016 WL 462696, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 4, 2016, no pet.) (mem. op., not designated for publication) (affirming the trial court's dismissal with prejudice where State failed to challenge all of the trial court's findings). We overrule the State's sole issue.

8

###### III. CONCLUSION

We affirm the trial court's orders of dismissal.

CLARISSA SILVA
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
25th day of July, 2024.